[No. 19622.   Department One.   March 26, 1926.]

GEORGE F. M. SHOCKEY, *Appellant,* v. ROYAL BAKING
POWDER MANUFACTURING COMPANY *et al.,*
*Respondents.*[1]

[1] MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION ACT—
"PLANT"—CITY STREET.  A city employee, engaged in heating
asphalt and pouring the same into the expansive joints of a
concrete pavement, at the time he was struck by a passing
automobile, was engaged in work "at the plant" of the city,
within the provisions of the Workmen's Compensation Act,
providing in such case that his remedy is solely against the
industrial fund.

Appeal from a judgment of the superior court for
King county, Oswald, J., entered May 7, 1925, dismiss-
ing an action for personal injuries sustained by a city
street employee struck by an automobile, upon the
opening statement of counsel and the pleadings, at a
trial before a jury.  Affirmed.

*Battle, Hulbert, Gates & Helsell,* for appellant.

*Roberts & Skeel,* for respondents.

FULLERTON, J.—This action was instituted by the
appellant, Shockey, against the respondents, Royal
Baking Powder Manufacturing Company, Royal Dis-
tributing Company, and E. G. Fredbloom, to recover
for personal injuries.  On the trial of the cause after
issue joined, and after the attorney for the appellant
had made his opening statement to the jury, the re-
spondents moved to dismiss the action, basing the
motion on the pleadings in the cause and the opening
statement.  This motion the trial court granted, en-
tering a judgment in accordance with the motion.  The
appeal is from the judgment so entered.

[1]   At the time of the occurrences which gave rise

[1] Reported in 244 Pac. 549.

to the action, the appellant was an employee of the city of Seattle, working upon the public streets of the city. His work was that of heating asphalt and pouring the heated product into the expansion joints of the concrete pavement with which the city's streets at the place of work were paved. While so working, and while in the course of his employment, the appellant was run into and injured by an automobile operated in the interests of the respondents and driven by the respondent Fredbloom. The sole question presented in this court is whether the appellant, when injured, was working at the plant of his employer, as that term is used in our workmen's compensation act. If he was so working, the judgment of the trial court is right and must be affirmed, otherwise it is wrong and there must be a reversal.

In our opinion, the question is controlled by our cases of *Zenor v. Spokane & Inland Empire R. Co.*, 109 Wash. 471, 186 Pac. 849, and *Diblasio v. Hunter*, 124 Wash. 98, 213 Pac. 470. In the first of these cases, the injured workman was an employee of the city of Spokane, engaged in the work of repairing a bridge on one of the public streets of the city. While so working, he came into contact with an electric wire carrying a large voltage of electricity, the wire being the property of the Spokane & Inland Empire Railroad Company. The action was against the railroad company, and the alleged negligence was that the company had placed the wire too close to the supports of the bridge. The question there was, as it is here, whether the injury was received by the workman at the plant of his employer. We held that it was so received, using this language:

"In *Carlson v. Mock*, 102 Wash. 557, 173 Pac. 637, we held that the word 'plant' was intended by the leg-

islature to include no more than that part of the employer's fixed property over which he has exclusive control, and not to include a street car track upon a public street, over which the employer had no oversight, and no means of protecting an employee from the negligent or wrongful acts of third persons. From the reasoning in that case it would seem almost to follow as a matter of course that, in this case, the bridge upon the city street, of which the city is the owner, over which it exercises control, and may, for the purpose of repair, wholly exclude the public therefrom and take any and every necessary step to insure the safety of its employees while engaged thereon, must be held to be part of the plant or premises of the city. The fact of the city's ownership of the bridge, qualified though it be (see 2 Dillon, Municipal Corporations, § 662; *Chicago v. Wright,* 69 Ill. 318; 1 Elliott, Roads and Streets (3d ed.), § 52), its duty to maintain and keep it in repair, and its control over and right to regulate its use for the purpose of protecting the workmen there employed, as well as the public generally, seem, in the light of what was said in *Stertz v. Industrial Insurance Commission,* 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B 354, and *Carlson v. Mock, supra,* to establish with reasonable certainty that the bridge was the city's premises and plant within the meaning of the act."

In the second of the cited cases the injured workman was an employee of the city of Seattle, engaged in the work of repairing the tracks of the municipal street railway of the city. He was injured while so engaged by an automobile driven by one Hunter, and sued Hunter to recover for the injuries. The question before this court was whether, at the time he received the injuries, he was at the plant of his employer, the court saying that, if he "was injured while working 'away from the plant,' he may maintain this suit, otherwise he may not." It was held that the place of work was at the plant of the employer. In the course

8—138 WASH.

of the opinion our prior cases were reviewed, and, in concluding, this was said:

"In this case, the employer of respondent not only owned the street railway system, but also had control over the place where respondent was injured, to wit, one of the public streets. It unquestionably had the power either to entirely close the street to motor vehicles while its street railway tracks were being repaired or so confine the traffic as to lessen the hazards to its employees. It had such control of the place where respondent was at work as that it could protect him 'from the negligence or wrongful act of third parties,' as stated in *Carlson v. Mock,* 102 Wash. 557, 173 Pac. 637. It was because of a lack of such control over the place of injury in the *Carlson* case we held the car tracks on the street were not a part of the 'plant,' and it was because of such power of control in *Zenor v. Spokane & Inland Empire R. Co.,* 109 Wash. 471, 186 Pac. 849, we held the bridge was a part of the city's 'plant.' Since such power of control and supervision existed in this case, under the doctrine of both the *Carlson* and the *Zenor* cases, we are required to hold that the respondent, at the time of his injury, was not working away from the plant of his employer. His remedy is solely against the industrial fund."

These cases are not distinguishable from the case at bar, and the rule they announce is, we think, the only rule that can justly be deduced from the terms of the statute. We may say here, however, as we have said in similar instances, it is a rule with which we are without sympathy. It permits a person guilty of wrong to charge a fund to which he neither contributes nor has an interest with the consequences of the wrong. But the evil is for legislative correction. The courts must administer the statute as they find it.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and PARKER, JJ., concur.